**The below described is SIGNED.**

**Dated: December 03, 2012**

*William J. Thurman*
**WILLIAM T. THURMAN**
**U.S. Bankruptcy Chief Judge**



_____

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH
## SOUTHERN DIVISION

| | |
|---|---|
| **In re:** | |
| **KATHY LYNN KOFFORD,** | **Bankruptcy No. 12-29134** |
| Debtor. | **Chapter 13** |
| | **Chief Judge William Thurman** |

**MEMORANDUM DECISION DENYING CONFIRMATION OF CHAPTER 13 PLAN**

The matter before the Court is the confirmation of the Debtor's Chapter 13 Plan ("Plan") dated July 17, 2012. The Court conducted an initial plan confirmation hearing on October 19, 2012. The Court heard oral argument from Geoffrey L. Chesnut on behalf of Kathy Lynn Kofford (the "Debtor") and from Kellie K. Nielsen on behalf of the Chapter 13 Trustee, Kevin R. Anderson (the "Trustee"). At the conclusion of the hearing, the Court took the matter under advisement.

The Trustee objected to the Plan on September 14, 2012 and filed a continuing objection on October 10, 2012 asserting that the Debtor is not complying with the disposable income

requirements of 11 U.S.C. § 1325(b)[1] and the Debtor did not propose the Plan in good faith as required by § 1325(a)(3). The Trustee's objection revolves around the Debtor's deduction of monthly contributions to a retirement plan and monthly payments on retirement plan loans that will terminate at various points during the 60-month plan term. The issues the Court must decide are: (1) whether the Debtor should reallocate funds after repayment of the retirement loans to increase the plan payment and (2) whether the Debtor must amortize or prorate the retirement loan payments based upon the length of the Plan on Line 55 of the Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form 22C").[2]

The Court has carefully considered the parties' briefs and memoranda, the statutory authority, and case law and has conducted its own independent research of the law. The Court issues the following Memorandum Decision, which constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 9014 and 7052.

---

[1] All subsequent chapter and section references herein are contained in Title 11 of the United States Code unless otherwise specified.

[2] The Court notes that this Memorandum Decision does not decide the issue of whether the Debtor is entitled a deduction on Form 22C for the Debtor's voluntary contributions to her retirement plan. The Trustee did not object to the Debtor's voluntary retirement plan contributions in the Objection to Confirmation of the Debtor's Chapter 13 Plan or in oral argument at the hearing on confirmation. The Trustee's Memorandum Brief states that "the Trustee has not historically objected to 401(k) contribution and repayment; however, based on recent developments in authoritative case law, the Trustee believes the issue should be revisited." The Debtor's Reply Memorandum does not discuss the issue of voluntary retirement contributions. Thus, the Court focuses this Memorandum Decision on retirement loan payments and leaves of the issue of whether a debtor may deduct voluntary retirement contributions for another day if the parties so desire.

2

**I.    JURISDICTION AND VENUE**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding under 28 U.S.C. § 157(a)(2)(L).  Venue is properly laid in this Court under 28 U.S.C. § 1408.

**II.    BACKGROUND**

The Debtor filed a voluntary chapter 13 petition for relief on July 17, 2012. The same day, among other documents, the Debtor filed the Plan, Statement of Financial Affairs and Schedules, and Form 22C. The Trustee filed an objection to the Plan on September 14, 2012 and a continuing objection on October 10, 2012. On October 16, 2012, the Debtor filed Amended Schedules B and J, an Amended Form 22C, and a responsive brief to the Trustee's objection.

At the initial confirmation hearing held on October 19, 2012, the Court heard oral argument on the Trustee's remaining objections to the Plan. While the Trustee objected to several deductions on the Form 22C, the Trustee's oral argument focused on the Debtor's deduction on Line 55 for retirement loan payments. In addition, at the hearing and in the Trustee's briefing, the Trustee objected to the Debtor's plan because the Debtor has failed to provide for reallocation of funds to the Plan after the retirement loans are paid-off at dates certain in the Plan.

At the conclusion of the hearing, the Court took the Trustee's objection regarding the Debtor's retirement loan payments under advisement and set a briefing schedule for the parties. The Court continued the confirmation hearing to December 14, 2012. On October 31, 2012 the Trustee filed a Memorandum Brief and on November 9, 2012 the Debtor filed a Reply Memorandum.

**III.    FINDINGS OF FACT**

The facts relevant to the Trustee's objection to confirmation of the Plan are undisputed. The Debtor's Schedule I, filed July 17, 2012 lists monthly income of $2,671.00. Among the monthly payroll deductions listed on Schedule I, the Debtor lists a "401k" deduction of $269.00 and a "401k Loan" deduction of $874. Schedule J, as amended on October 16, 2012, reflects a monthly net income of $161.00.

The Debtor filed an Amended Form 22C on October 16, 2012. The Form 22C reflects a six-month average monthly gross income of $4,982.03. The Debtor's annualized income is therefore $59,784.36 which exceeds the median family income for a household of one in Utah. Thus, the Debtor is an "above-median debtor" and her minimum commitment period is five years under § 1325(b)(4). On Line 55 of the Form 22C, the Debtor deducts $1,146.07 as "qualified retirement deductions" which represents the total amount of the monthly retirement loan payments in addition to the Debtor's average monthly retirement plan contributions. After entering the deductions on Form 22C, including the retirement loan payments and contributions discussed above, the Debtor's monthly disposable income is negative $156.86.

The Plan proposes a monthly payment of $161.00 in accordance with the Debtor's monthly net income reflected on Schedule I and J. Because the debtor is unable to repay all of her unsecured creditors in full, the Plan is a "base plan" and the Debtor must make monthly plan payments for at least 60 months. After payment in full of all other disbursements, the balance, if any, will be distributed to allowed nonpriority unsecured creditors.

The Debtor's pay advices reflect that the Debtor is contributing approximately $230.00

4

per month to a retirement plan and she is repaying approximately $947.00 per month on three retirement loans. Adopting the nomenclature for the retirement loans as the Trustee refers to them in his Memorandum Brief, the chart below summarizes the balance, monthly payment, and estimated payoff date for each of Debtor's retirement loans.

|        | **Monthly Payment** | **Balance** | **Estimated Payoff Date** |
|--------|---------------------|-------------|---------------------------|
| **Loan A** | $316.00 | $9,628.91 | May 2015 |
| **Loan B** | $426.00 | $2,887.44 | April 2013 |
| **Loan C** | $205.00 | $1,401.65 | March 2013 |

Based on these figures, the Trustee estimates that the Debtor will make a total retirement contribution, including retirement loan payments, of $11,391.00 during the first year of the Plan and $29,046.00 over the Plan's five-year commitment period.

## IV.   DISCUSSION

### A.   PRORATING RETIREMENT LOAN PAYMENTS OVER THE 60-MONTH PLAN TERM

The Trustee objects to confirmation of the Plan under § 1325(b) because the Debtor is deducting the full amount of her monthly retirement loan payments on Line 55 of Form 22C rather than prorating the payments over the 60-month plan term. The Trustee's position is that prorating the retirement loan payments over the 60-month plan term will ensure that the Debtor is not improperly understating the required return to creditors because the retirement loans will mature at dates certain during the 60-month term. According to the Trustee's calculations, the Debtor's $1,146.07 deduction on Line 55 of Form 22C should be reduced to a deduction of

5

$462.31.[3] Once the deduction on Line 55 is decreased to $462.31, the calculation of Monthly Disposable Income on Line 59 becomes $526.90 and the required return to nonpriority unsecured creditors is $21,592.80.

The Debtor contends that under § 1322(f), amounts required to pay retirement loans are not disposable income and that she is entitled her to deduct the full amount of her monthly retirement loan payments on Line 55. The Debtor argues that proration of the retirement loan payments over the 60-month term of the plan would impermissibly violate § 1322(f) by materially altering the terms of the loans and that the instructions of Line 55 authorize the Debtor to deduct the full amount she pays each month to retirement loans when it refers to entering the "monthly total." In addition, the Debtor contends that she would not have the "excess" funds the Trustee asserts are available at the conclusion of the amortization analysis.

### 1.    Section 1325(b)(1), Projected Disposable Income, and Form 22C

The meaning of "projected disposable income" lies at the heart of the dispute over whether the Debtor can deduct the full amount of her monthly retirement loan payments or must prorate those payments over the 60-month plan term. To confirm a chapter 13 plan, the Court must find that the proposed chapter 13 plan meets the requirements of § 1322 and § 1325(a). If the Trustee objects to confirmation of a chapter 13 plan, as is the case here, the Court cannot confirm the plan unless it satisfies § 1325(b)(1). Section 1325(b)(1) requires that:

---

[3] This dollar amount represents the total retirement loan payments prorated over 60 months plus the Debtor's monthly retirement plan contributions. To reach this amount, the Trustee took the total balance of the Debtor's retirement loans of $13,918.00 and divided by 60, resulting in $231.97. The Trustee added the Debtor's average monthly retirement contribution of $230.34 to reach a deduction of $462.31.

6

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
>     (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>     (B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan. 11 U.S.C. § 1325(b)(1) (emphasis added).

Thus, the Court may not confirm a chapter 13 plan unless the Court finds that the debtor is contributing all of the debtor's projected disposable income to the plan for payment to unsecured creditors. While the Bankruptcy Code does not define the term "projected disposable income" used in § 1325(b)(1)(B), it does define the term "disposable income" in § 1325(b)(2):

> (b)(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended--
>     (A)(i) for the maintenance or support of the debtor or a dependent of the debtor . . . . 11 U.S.C. § 1325(b)(2).

If the debtor is an "above-median" debtor, meaning that the debtor's income exceeds the state's median income, the debtor must use § 707(b)(2)(A)-(B) to determine the "reasonably necessary expenses" allowed to be deducted from current monthly income under § 1325(b)(2). § 1325(b)(3). Section 707(b)(2), commonly referred to as the "means test," "sets out a structured method of calculating reasonably necessary expenses that is designed to reduce the discretion of bankruptcy courts and to ensure that debtors pay more to their unsecured creditors." In re Lasowski, 575 F.3d 815, 818 (8th Cir. 2009). Official Form 22C, which above-median chapter 13 debtors must complete and file to determine the debtor's applicable commitment period and disposable income, incorporates the means test.

Line 55 of Form 22C allows debtors to deduct required repayments to retirement plan loans. The text of Line 55 instructs the debtor to "[e]nter the monthly total of (a) all amounts withheld by your employer from wages as contributions for qualified retirement plans, as specified in § 541(b)(7) and (b) all required repayments of loans from retirement plans, as specified in § 362(b)(19)." Section 362(b)(19) provides that the automatic stay does not apply to retirement loan payments withheld from a debtor's wages. For chapter 13 debtors, § 1322(f) provides that "[a] plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay such loan shall not constitute 'disposable income' under section 1325."

The Debtor cites to In re Haley, 354 B.R. 340 (Bankr. D. N.H. 2006) and In re Wiggs, No. 06 B 70203, 2006 WL 2246432 (Bankr. N.D. Ill. Aug. 4, 2006) in support of her contention that she is entitled to deduct the entire, actual amount of her monthly retirement loan payments despite the fact that all three loans will expire at months certain during the plan term. In determining the amount that the debtors were entitled to deduct on Line 55 of Form 22C for their retirement loan payments, both the Haley and Wiggs courts found that the instructions on Line 55 of Form 22C, read together with § 1322(f)'s prohibition against "materially alter[ing] the terms of a [retirement] loan described in section 362(b)(19)" suggested that "prorating the loan payments over sixty months would materially alter the loan." In re Haley, 354 B.R. at 344; In re Wiggs, 2006 WL 2246432 at *3. Relying on these two cases decided in 2006, the Debtor concludes that prorating the amount of her retirement loan payments for the purposes of Form 22C would result in an improper, material alteration of the terms of her retirement loan.

While the Tenth Circuit has not weighed in on this issue, other courts, including the Eighth and Fifth Circuit Courts of Appeals, have come to the conclusion opposite of Haley and Wiggs, holding that prorating retirement loans payments over 60 months for the purposes of Form 22C is not a material alteration of the terms of the loan. See In re Lasowski, 575 F.3d 815 (8th Cir. 2009); In re Nowlin, 576 F.3d 258 (5th Cir. 2009); In re Davis, 425 B.R. 317 (Bankr. S.D. Tex. 2010); Spalding v. Truman, No. 4:08-CV-064-Y, 2008 WL 4566459, at *1 (N.D. Tex. Oct. 14, 2008); In re Novak, 379 B.R. 908 (Bankr. D. Neb. 2007). In Lasowksi, the Eighth Circuit Court of Appeals reversed the bankruptcy court and held that "the calculations of disposable income and projected disposable income do not alter the terms of the 401(k) loan . . . . These calculations simply determine the total amount that [the debtor] must distribute to her unsecured creditors over the course of her plan." 575 F.3d at 820 (citations omitted).

The Court finds the reasoning of Lasowski and the other courts aligning with its conclusion persuasive. The Court does not view prorating the retirement loan payments over the 60-month plan term for purposes of Form 22C as a "material alteration" of the Debtor's retirement loan terms. Allowing the Debtor to deduct the actual monthly amount of her retirement loan payments on Line 55 of Form 22C when they will end before the Plan is completed improperly skews the amount of her projected disposable income, and in turn, the required return to creditors. Requiring the Debtor to prorate the amount of her retirement loan payments over the 60-month plan term "is the only way to ensure that the amount required to repay the loan (and *only* the amount required to repay the loan) will be excluded from the disposable income calculation." In re Novak, 379 B.R. 908, 911 (Bankr. D. Neb. 2007). By the Debtor's reasoning, even if she had one retirement loan payment remaining at the time she

9

completed Form 22C, she would be allowed to deduct the entire amount of her payment on Line 55 to calculate her projected disposable income. Id. Such a result would inappropriately minimize return to creditors and distort the reality of the Debtor's situation.[4]

The Debtor further argues that if she must prorate her retirement loan payments over the 60-months of the Plan for the purposes of Line 55 of Form 22C, that her disposable income will be greatly inflated and will reflect a return higher than what she can afford. The Court would understand the Debtor's argument if the projected disposable income on Form 22C determined the plan payment. As noted by the Bankruptcy Court in In re Novak:

> The means test calculation is simply that—a calculation. Its purpose is to determine the amount of the debtor's projected disposable income that must be returned to unsecured creditors over the life of the plan. It does not, by itself, establish the debtor's plan payment nor the order in which claims will be paid.
> 379 B.R. at 911.

Thus, because the projected disposable income determines the required return to creditors and not necessarily the plan payment, the Court finds the Debtor's position unconvincing.

In addition to the fact that the Court finds that § 1322(f) does not "materially alter" the terms of the Debtor's retirement loan, the Court also finds support for its holding in the Supreme Court's interpretation of projected disposable income. In the 2010 Hamilton v. Lanning decision, the Supreme Court ended the long-running debate over whether bankruptcy courts should adopt a mechanical or a forward-looking approach when calculating projected disposable income pursuant to § 1325(b). Lanning, 130 S. Ct. 2464 (2010). In adopting the forward-looking approach, the Supreme Court held that "[c]onsistent with the text of § 1325 and pre-BAPCPA

---

[4] The discussion of reality and chapter 13 plans reminds the Court of the oft-cited quote of Judge Dunn in In re Mullen, "Chapter 13 is not some alternative universe where reality dare not intrude." 369 B.R. 25, 34 (Bankr. D. Or. 2007).

10

practice . . . when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." Id. at 2478. Thus, when a debtor has an expense that is "known or virtually certain" to change during the plan at the time of confirmation, a bankruptcy court may properly take that change into account when determining the debtor's projected disposable income. By analogy, the Tenth Circuit Bankruptcy Appellate Panel held that an above-median debtor was not allowed to deduct his mortgage expense on Form 22C where the debtor was surrendering the home. In re Liehr, 439 B.R. 179, 187 (10th Cir. B.A.P. 2010).

Here, it is virtually certain that the Debtor's retirement loans will end in March 2013, April 2013, and May 2015 respectively. All of the termination dates fall within the 60-month plan term. To ignore this fact would not reflect the Debtor's true projected disposable income over the length of the Plan and in turn, would distort the Debtor's required return to unsecured creditors. Thus, the Court holds that the appropriate amount for the Debtor to deduct on Line 55 of Form 22C is the Debtor's retirement loan payments prorated over the 60-month commitment period.

### B.    REALLOCATION OF FUNDS AFTER REPAYMENT OF RETIREMENT LOANS

The Trustee also asserts that the Debtor's failure to reallocate funds available after the repayment of the Debtor's retirement loans to payment of creditors is a failure to contribute all of her projected disposable income to the Plan and is evidence of the Debtor's lack of good faith. The Trustee argues that the Debtor should provide for increased plan payments after repayment of the Debtor's retirement loans to ensure that all of her projected disposable income is

11

contributed to the plan for the benefit of creditors.[5] Absorbing the funds available after repayment of the retirement loans into other expenses is, in the Trustee's view, a lack of good faith.

While the Debtor does not object to increasing the plan payment in some amount at the maturity of each retirement loan, she does object to a mechanical or automatic step-increase in plan payments at the maturity of each loan. The Debtor asserts that while her Schedules I and J reflect her financial circumstances as of the date of the petition, she may have future reductions in income due to her employer decreasing her work hours. Thus, the Debtor requests that a status review be conducted at the termination of each loan to determine what the Debtor may be able to reallocate based upon her finances as they exist at that time.

The Court does not agree with the Debtor that a status review at the end of each retirement loan is a feasible alternative to step-increases in plan payments which will result in additional income in the amount of the monthly loan payment. The retirement loans are certain to end at fixed dates throughout the 60-month plan term. While the Debtor anticipates future decreases in her wages, she does not provide the amount of such decreases or how her budget will change at that future point. Requiring step-increases in plan payments at the end of each of the Debtor's retirement loans comports with the holding of Lanning,130 S. Ct. 2464 (2010), because the maturity of the Debtor's retirement loans are events that are known to occur at a date certain during the 60-month plan term. However, the Debtor's speculative decrease in her wages

---

[5] According to the Trustee's calculations, the plan payment should increase from $161.00 beginning September 2012 to $366.00 beginning April 2013 when Loan C is paid off; from $366.00 to $792.00 beginning May 2013 when Loan B is paid off; and from $792.00 to $1,107.00 beginning June 2015 when Loan A is paid off.

is not so certain, or at least the evidence provided does not indicate with certainty the number of hours that her employer will cut from her work-week or how that will affect her gross wages. Thus, the Court finds that step-increases to the plan payments at the end of each retirement loan is the appropriate method to best ensure that the Debtor is contributing all of her projected disposable income will be applied to the plan in compliance with § 1325(b)(1)(B).

The Trustee also argues that the Debtor's failure to reallocate retirement loan payments to the Plan once the retirement loans are paid-off at a date certain is evidence of the Debtor's lack of good faith under § 1325(a)(3). In the Flygare case, the Tenth Circuit Court of Appeals discussed eleven factors relevant in determining the good faith inquiry. Flygare v. Boulden, 709F.2d 1344, 1347-48 (10th Cir. 1983).[6] As noted by the Tenth Circuit Court of Appeals in the 2012 Cranmer decision, the Bankruptcy Code later was amended to include § 1325(b) and thus the issue of good faith is a narrower inquiry. In re Cranmer, 697 F.2d 1314, 1319 n.5 (10th Cir. 2012).

The Court is persuaded that the Debtor's failure to provide for reallocation of funds once her retirement loans are paid indicates a lack of good faith in this case. While the Debtor seeks to use the extra funds as a cushion against future events, like a loss in income, those facts are not

---

[6] The eleven "Flygare" factors included: (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee. Flygare, 709 F.2d 1344 at 1347-48.

before the Court at this time and proactively absorbing the funds available once the retirement loans are repaid would not be fair to creditors.

Of course, the Debtor is free to file a motion to modify the plan at any time throughout the Plan's term if she deems it necessary given her employer's indication that the Debtor's work hours will be cut in the future. However, the facts currently before the Court indicate that it would be premature to require three separate status reviews at the end of each retirement loan because the Debtor might have different financial circumstances at that time. See Spalding v. Truman, No. 4:08-CV-064-Y, 2008 WL 4566459, at *4 (N.D. Tex. Oct. 14, 2008) (holding that "the Court can see no reason why the bankruptcy court could not resolve the matter as part of the initial chapter 13 plan rather than require additional future litigation, given that all the relevant facts were already before the court"); In re Nowlin, 576 F.3d 258, 267 (5th Cir. 2008) (holding that for events "less than reasonably certain to occur, amendment under 11 U.S.C. § 1329 is the appropriate way to proceed if a party wishes to change the plan"). If the Debtor determines that a motion to modify the plan is appropriate at some point in the future, the Court will consider the Debtor's financial circumstances as she presents them at the time of the motion. To do otherwise would be a premature adjudication of possible future events. Thus, the Court denies confirmation of the Plan because it does not propose to contribute all of the debtor's projected disposable income under § 1325(b).

## V.   CONCLUSION

Based on the foregoing, the Court concludes that the Plan should not be confirmed. A separate order denying confirmation will accompany this Memorandum Decision. This ruling is without prejudice to the Debtor seeking to modify the Plan consistent with the holdings of this

Memorandum Decision, within 30 days of the entry of the order. If no modifications are made, the case will be dismissed.

_____END OF DOCUMENT_____

ORDER SIGNED

oo00–00oo

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below:

Kevin R. Anderson
405 South Main Street
Suite 600
Salt Lake City, UT 84111
    *Chapter 13 Trustee*

United States Trustee
Ken Garff Bldg.
405 South Main Street
Suite 300
Salt Lake City, UT 84111
    *United States Trustee*

Kathy Lynn Kofford
1141 West 360 North #20
Saint George, UT 84770
    *Chapter 13 Debtor*

Andres Diaz
Thomas Neeleman
Geoffrey L. Chesnut
Red Rock Legal Services, P.L.L.C.
Mainstreet Plaza Executive Suites
20 North Main Street, Suite 305
Saint George, UT 84770
    *Attorneys for Debtor*